## INGRAM v. PLASKET.

In the case of an appeal, the justice of the peace is bound to file his transcript within the time prescribed by statute, though his fees have not been paid or tendered.

The defendant against whom a judgment had been rendered by a justice of the peace, appealed to the Circuit Court.  The transcript not being filed in time by the justice, the appeal was dismissed; and the appellant sued the justice for his neglect.   *Held*, that the plaintiff in this case might prove admissions, made on the trial of the original suit, by the plaintiff there, tending to show that there was no foundation for that suit.

The justice, in this case, had filed the appeal-bond in the clerk's office after the limited time.   *Held*, that the circumstance of his having filed the bond, precluded him from requiring the plaintiff to prove its execution.

*Tuesday,*
*December 2.*

ERROR to the *Clark* Circuit Court.

STEVENS, J.—The material facts presented by the record in this case are these:—*Ingram*, the plaintiff in error, was a justice of the peace, and a certain *H. Smith* and *M. T. Abbott*, doing business under the style and firm of *Smith & Abbott*, brought suit before *Ingram* against *Plasket*, the defendant in error, for certain goods, wares, and merchandize, &c. and recovered a

judgment. *Plasket* appealed to the Circuit Court, and entered into an appeal-bond, &c. *Ingram*, the justice of the peace, failed to file in the Circuit Court a transcript of the judgment and proceedings before him, together with the appeal-bond and the papers of the case, within twenty days from the date of the appeal-bond, as by statute he is required to do; by which *Plasket* lost the benefit of his appeal, and was compelled to pay the judgment rendered by the justice, and costs, without a further hearing, &c. For this official misfeasance of *Ingram*, *Plasket* brought this suit: *Ingram* pleaded not guilty, a jury trial was had, and a verdict found for *Plasket*, on which final judgment was rendered.

It appears of record by a bill of exceptions, that although *Ingram* failed to file the transcript, appeal-bond, and papers of the suit, within twenty days after the date of the appeal-bond, yet that he did afterwards file them, and that *Plasket*, on the trial of this suit in the Court below, for the purpose of proving that he had regularly taken his appeal, and that the transcript, &c. had not been filed by the justice of the peace, within twenty days after the date of the appeal-bond, offered in evidence the appeal-bond itself, after having proved that the appeal-bond offered was the one which *Ingram*, the justice, had himself filed in the Circuit Court, with the transcript and other papers of the suit. To this appeal-bond there was a subscribing witness; and *Plasket*, after having proved that the subscribing witness did not reside in the state of *Indiana*, offered further to establish the bond by proving the handwriting of the obligors; to this *Ingram* objected, but the objection was overruled, and the handwriting of the obligors was proven, and the bond went to the jury.

It further appears by the bill of exceptions, that on the trial of this case, it was proved that the goods, wares, and merchandize, for which *Smith & Abbott* sued *Plasket* before the justice, were sold to the wife of *Plasket;* and *Plasket* then offered to prove that *Smith*, on the trial before the justice, had admitted that *Plasket* had forbidden him to sell anything to his wife upon a credit. To the proof of which admissions *Ingram* objected, because *Smith* himself was a competent witness to prove the fact by, and was the best evidence, and should be resorted to, unless some legal reason existed that authorised the introduction of secondary evidence; the objection was, however, overruled and the admissions of *Smith* were proven.

Nov. Term,
1834.

INGRAM
v.
PLASKET.

To the judgment and proceedings in this case several objections are raised.

First, It is insisted that the declaration is defective; that the justice of the peace was not bound to file the transcript and papers, unless he was either paid or tendered his fees; and that there is no such averment in the declaration. This exception is not well taken: the statute does not authorise any such construction. The words are, "all justices of the peace, &c. shall be allowed six cents per mile for travelling to file appeal papers in the clerk's office of their respective counties; to be collected as their other fees." This language is to us plain, clear, and conclusive.

Secondly, It is contended that the Court erred in the admission of testimony to prove the acknowledgment of *Smith*, who was himself a competent witness, and might have been used as a witness to prove the same.

It is a settled rule, that the best evidence that the nature of the case admits of must be adduced, unless some obstacle lies in the way which legally authorises a resort to inferior evidence. The highest degree of certainty of which the mind is capable, with respect to the existence of a particular fact, consists in a knowledge of the fact derived from actual perception of the fact by the senses. It is seldom, however, that a jury can act upon knowledge of this description; it rarely happens that a fact which can be decided by mere inspection, is submitted to the consideration of a jury. The second degree of evidence in the scale of certainty, consists of information derived from the relation and information of those who have had the means of acquiring actual knowledge of the fact, from actual perception of the same by the senses; and upon knowledge thus derived juries must in general act. The jury, in general, must be informed of the facts by those who have been eye and ear witnesses of them. The third degree of evidence in the scale of certainty, consists in information derived, not immediately from one who has had actual knowledge of the fact by the perception of his senses, but from one who knows it only by its having been asserted by some other person; this is generally termed hearsay evidence.

In the common course of life, this third species of evidence is usually acted upon without scruple; but, in a Court of justice, it is a general rule that such evidence is not sufficient. This

general rule, however, has several exceptions. Public documents made under lawful authority, such as proclamations, public surveys, records, &c. are excepted from this general rule. And, in like manner, where the declaration is in itself a fact, and is part of the *res gestæ*, the objection to hearsay ceases. The distinction between a mere recital which is not evidence, and a declaration which is to be considered as a fact in the transaction and therefore evidence, frequently occasions much discussion. The rule is this,—if the declaration has a tendency to illustrate the question, and any importance can be attached to it as a circumstance which is part of the transaction itself, and deriving a degree of credit from its connexion with the circumstances, independently of any credit to be attached to the speaker, then it is admissible evidence.

Hence it is, that when the nature of a particular act is questioned, a contemporary declaration by the party who does the act, is evidence to explain it. Where, for instance, in cases of bankruptcy, in actions between the assignees and third persons, the question is, with what intent the person declared bankrupt absented himself from his house, his declaration, contemporary with the fact of departure, is evidence to explain that intention. Also, in *Ld. George Gordon's Case*, it was held that the cry of the mob might be received in evidence as part of the transaction. In the case of an indictment against a man, as an aider or abettor of the principal, who has committed a felony, the confession of the principal that he committed the act, is *prima facie* evidence against the accessory, that the principal is guilty of the felony charged; and so also is the record of the conviction of the principal, although he pleaded not guilty.

The objection of hearsay evidence, or *res inter alios*, can never operate to the exclusion of any statement of a fact, which the law regards as a proper and safe medium for conveying the truth to a jury; for in such case the evidence is admissible, because it is in itself, and in its connexion with the circumstances, deserving of credit, and it is no more *res inter alios* than the fact itself is. And it may be here observed, that such evidence does not rest upon the credit due to the person who makes the statement, but would in general be good, although the person who made it would not, in ordinary cases, be believed upon oath. It is admitted as part of the transaction, on the presumption that it is calculated to elucidate the

facts with which it is connected; and being made by the party who transacted the business, and who knew, as explanatory of his own act, without premeditation, as a matter of fact connected with the matter in dispute, and not with a view to affect the party, otherwise than as the actual existence of the fact affects the transaction itself, it is evidence although the party who made it may be himself a competent witness. And notwithstanding it may be a transaction between others, yet as a mere fact, and part of the *res gestæ*, it is evidence. As, for instance, in the case of goods consigned by *A.* to *B.*, and *C.* injures them whilst they are in the hands of the carrier; in an action against *C.* for the wrong, by either *A.* or *B.*, it is competent for the plaintiff to prove his property in the goods by proof of the agreement of the other that the plaintiff was the owner; in such case *C.*, the defendant, is not either privy or party to the agreement between *A.* and *B.*, nor would either *A.* or *B.* be incompetent to be a witness for the other; yet proof of the agreement is evidence against *C.*, not as concluding any right of his without his assent, but as affecting the nature of the transaction itself, and showing to whom the injury was done.

In the case now before us, we think that the admission of *Smith* is a fact so connected with the main transaction itself, as to form a part of it, and is legal evidence to elucidate and explain; and although it is between others, yet it is a part of the *res gestæ* and may go in evidence with the rest of the transaction. It is wholly immaterial whether the admission is true or false, it is binding on *Smith & Abbott*, attaches to their claim, and forms a part of the proceedings before the justice of the peace, and shows that their judgment against *Plasket* was perhaps improperly obtained, and would have been reversed if the appeal had been perfected; and, therefore, may legally be given in evidence with the rest of the transaction in the suit between *Plasket* and *Ingram*, to show the amount of injury *Plasket* sustained by losing the benefit of his appeal. If the admission would be good evidence against *Smith & Abbott*, and could be proved by those who heard the admission, it is good evidence against *Ingram* and may be proved in the same way.

The third and last point is, whether the Court erred in permitting the plaintiff to prove the handwriting of the obligors to the bond offered in evidence, before they had produced legal evidence that the handwriting of the subscribing witnesses

could not be proved. The general rule is, if the subscribing witness is out of the state, or is interested, dead, blind, or convicted of an infamous crime, &c., that the handwriting of the witness must be proved if it can be: if it cannot be, then the handwriting of the obligor of the bond. And, generally, where the subscribing witness cannot be had, the instrument is permitted to go to the jury on the proof of the handwriting of the witness; but the Court may, and it is often done, require proof of the handwriting of the obligor also. *Wallis* v. *Delancey*, 7 T. R. 262, note.—*Hopkins* v. *De Graffenreid*, 2 Bay, 187.—*Oliphant* v. *Taggart*, 1 Bay, 255.—*Clark* v. *Sanderson*, 3 Binn. 192.—*Cooke et al.* v. *Woodrow*, 5 Cranch, 13.

It appears by the case of *Barnes* v. *Trompowsky*, 7 T. R. 261, that these rules were originally founded on the notion, that the subscribing witness is agreed upon between the parties to be the only witness to prove the instrument; but Judge *Spencer*, in the case of *Hall* v. *Phelps*, 2 Johns. Rep. 451, when speaking of this notion, says it is, to speak with all possible delicacy, an absurdity. Latterly, the rule has been placed on the ground that the best evidence should be required that the nature of the case admits of, and that the subscribing witness himself is the best evidence. Lord *Mansfield*, in the case of *Abbot* v. *Plumbe*, Doug. 216, said that the objection arising from the absence of subscribing witnesses, was a captious one; and Chief Justice *Kent*, in the case of *Jackson* v. *Burton*, 11 Johns. Rep. 64, observes, that by the rules of practice in the Court, great latitude of discretion is exercised on that point. And, of late, Courts have considered the objection arising from the absence of subscribing witnesses, if unaccompanied by any suggestion of fraud, as entitled to less regard than formerly.

In the case of *Homer* v. *Wallis*, 11 Mass. Rep. 308, it is decided that the handwriting of the obligor to a promissory note might be proved, if the subscribing witness was out of the state, without proving the handwriting of the subscribing witness. The Court said, that the rule requiring the handwriting of the subscribing witness to be proved, only related to instruments that were by law required to be attested by subscribing witnesses to make them valid and binding, such as conveyances of real estate, wills, &c.; but if the writing was valid and binding in law without a subscribing witness, the witness' handwriting might be waived and not proved at all. But in the cases of

# 456

CASES IN THE SUPREME COURT

Nov. Term, 1834.

INGRAM
v.
PLASKET.

Doe v. *Durnford*, 2 M. & S. 62, and *Higgs* v. *Dixon*, 2 Stark. Rep. 180, it was held that the rule is inflexible, and applies to all attested writings (1).

The point under discussion is by no means clear of all doubt, but upon a view of the whole ground connected with the other facts of the case, we think the evidence was correctly admitted. If *Ingram* did, as a justice of the peace, bring the bond in question into the clerk's office, and file it with the transcript and papers of the case, as the appeal-bond by him in that case taken, he was estopped by his own act. He could not deny the making of the bond by the persons whose names were attached as obligors, nor could he require proof of its execution,—the bond was good evidence against him without any proof of its execution. That he did so bring the bond and file it among the papers and transcript of the case, as the appeal-bond by him taken, &c. there is no doubt; the record is as to that sufficiently express and certain.

*Per Curiam.*—The judgment is affirmed with costs.

*J. H. Thompson* and *I. Naylor*, for the plaintiff.

*C. Dewey*, for the defendant.

(1) "In the ordinary course of legal proceedings, instruments under seal, purporting to be executed in the presence of a witness, must be proved by the testimony of the subscribing witness, or his absence sufficiently accounted for. Where he is dead, or cannot be found, or is without the jurisdiction, or is otherwise incapable of being produced, the next best secondary evidence is the proof of his handwriting; and that, when proved, affords *prima facie* evidence of a due execution of the instrument, for it is presumed that he would not have subscribed his name to a false attestation. If upon due search and inquiry no one can be found who can prove his handwriting, there is no doubt that resort may then be had to proof of the handwriting of the party who executed the instrument; indeed such proof may always be produced as corroborative evidence of its due and valid execution, though it is not, except under the limitations above suggested, primary evidence. Whatever may have been the origin of this rule, and in whatever reasons it may have been founded, it has been too long established to be disregarded; or to justify an inquiry into its original correctness." Per *Story*, J. *Lessee of Clarke et al.* v. *Courtney et al.* 5 Peters, 319, 344. Vide, also, *Booker* v. *Bowles*, Vol. 2, of these Rep. 90, and notes.