DOANE et al. *v.* GLENN et al.

EVIDENCE OF DECLARATIONS *of parties in charge of property to show possession.*
On the trial of an issue as to ownership of property, between interpleading claimants and plaintiffs in attachment, the declarations of the claimants

and others who were present with the property, made to the officer at the time the writ was levied, are admissible to show who were in possession of the property.

EVIDENCE *as to who was in charge of property admissible.* The officer having testified that the claimants were with the property attached at the time the levy was made, his testimony upon that point was admissible, and a motion to exclude all of his testimony from the jury, was properly overruled.

MISNOMER — *as to middle name.* The law knows but one christian name, and the omission or incorrect insertion of a middle name or initial letter is immaterial.

PRACTICE — *when formal objections to deposition must be made.* Formal objections to a deposition must be made before trial, and the objection that the official character of a notary public, by whom the deposition was taken, is not authenticated, is of this nature.

DEPOSITION — *witness must be sworn in the cause.* A deposition taken in an attachment suit, upon notice that the deposition would be read upon the trial of the cause, and the witness being sworn to testify in that cause, is not admissible upon the trial of an issue between interpleading claimants of the property attached and the plaintiffs in the attachment.

PRESUMPTION OF OWNERSHIP *arising from possession of personal property.* Upon issue joined between interpleading claimants and plaintiffs in attachment, where there is evidence to show that the claimants were in possession of the property at the time the writ was levied, the jury was properly instructed, that, if the property was found in possession of the claimants at the time of the levy, from such possession the law raises a presumption that the claimants were then the owners of such property.

JUDGMENT *on issue found for interpleading claimants.* It is irregular to enter judgment in favor of the interpleading claimants for the possession of the property attached, but where all the property attached is embraced in the claimant's pleading, the irregularity is not sufficient to reverse judgment.

EVIDENCE OF OWNERSHIP *of property attached — sheriff's return.* Where the sheriff returns to a writ of attachment that the defendants are not found in his county, and does not state in whose possession he found the property attached, such return does not make out a *prima facie* case of ownership of the property in the attachment defendants.

### *Error to District Court, Arapahoe County.*

THE sheriff's return to the writ of attachment was as folfows: " I have duly executed this writ by levying on seven hundred and fifty-five head of Texas cattle, branded seventy-one. Six horses or two mares and four geldings, one saddle, one bridle, one heavy wagon, one sorrel mare branded ƶ⁄₀, connected on right shoulder, one sorrel mare branded OX on left hip, M S on shoulder, one sorrel horse branded LL on shoulder, one bay horse branded H on

shoulder, one black poney branded HS on shoulder, one black poney branded B on shoulder, as I am therein commanded, and have the said property now in my possession. The within-named Oliver S. Glenn and Rufus E. Talpey are not found in my county."

The claimants described the property in their plea as follows : " Seven hundred and fifty-five head of Texas cattle branded " 71," one sorrel mare branded $\frac{z}{6}$, connected on right shoulder, one sorrel mare branded OX on left hip, one sorrel horse branded LL on shoulder, one bay horse branded H on shoulder, one black poney branded HS on shoulder, one black poney branded B on shoulder, one saddle, one bridle, one heavy wagon."

The judgment of the court was as follows : " It is considered by the court that the property taken by virtue of the writ of attachment in this cause be delivered up to the said Lockhart T. Glenn and George O. Talpey, and that a writ of *retorno habendo* be awarded and issued therefor."

In addition there was judgment for costs.

The evidence is sufficiently stated in the opinion of the court.

The first instruction to the jury is given in the opinion of the court ; the second and third instructions were as follows:

If the interpleading claimants purchased the stock which is in controversy with the funds of the defendants, or held the same for the use of the defendants, then such purchase and holding was a fraud upon the creditors of the defendants, and the property in question was subject to the levy of the plaintiff's writ of attachment.

Such fraud as supposed in the last instruction is not to be presumed or inferred without proofs, and it is for the jury to say, upon all of the facts and circumstances in proof, whether the possession of the interpleading claimants was an honest one or merely colorable and fraudulent.

Messrs. Charles & Elbert, for plaintiffs in error.

Messrs. France & Rogers, for defendants in error.

Belford, J.   Plaintiffs in error commenced suit by attachment in the district court of the county of Weld, on the 22d day of September, 1870, against Oliver S. Glenn and Rufus E. Talpey, for the sum of $7,000.   A writ of attachment was issued, directed to the sheriff of said county, which was, on the 23d day of September, 1870, levied on the following described property, to wit: seven hundred and fifty-five head of Texas cattle, six horses, one saddle and bridle, and one heavy wagon.   At the following December term of the district court defendants in error filed in said suit their plea, claiming that they were the absolute owners of, and entitled to, the immediate possession of the property above set forth.   To this plea a replication was filed by the attachment plaintiffs, denying that the property levied on by the writ of attachment, and described in said plea, was the property of said interpleaders, or that they were entitled to the possession of the same. Issue being joined, by stipulation of the parties, the cause was brought to Arapahoe county for trial.   The jury returned a verdict for the defendants in error, on which judgment was rendered for return of the property attached.   On the trial below, the interpleading claimants, to support the issue on their side, introduced as a witness one Thomas E. Benson, who testified that, as deputy sheriff, he had levied the writ of attachment; "that at the time of the levy he found the property in the possession of George Glenn and Dr. Talpey.   These young men were in possession of the cattle.   They had some herders with them.   One colored person driving a team, and one other man on horseback. Did not know that they, the interpleaders, were in possession more than the other men who were there, except from what they told him.   Saw them there with the cattle, so were the other men as much as they."   The plaintiffs moved to exclude this testimony, on the ground that Benson's knowledge of the possession was derived from the declarations of the claimants and, therefore, hearsay and inadmissible. This motion was denied by the court, and this constitutes the first assignment of error, which we will notice.   The

declarations made by the claimants to Benson do not appear in the record, and hence, we are unable to judge of their character and force.

It is a settled rule, that the best evidence that the nature of the case will admit of must be adduced unless some obstacle lies in the way which legally authorizes a resort to inferior evidence. The highest degree of certainty of which the mind is capable, with respect to the existence of a particular fact, consists in a knowledge of the fact, derived from actual perception of the fact by the senses. It is seldom, however, that a jury can act upon knowledge of this description; it rarely happens that a fact which can be decided by mere inspection is submitted to the consideration of the jury. The second degree of evidence in the scale of certainty consists of information derived from the relation and information of those who have had the means of obtaining actual knowledge of the fact, from actual perception of the same by the senses; and upon knowledge thus derived juries must in general act. The jury must be informed of the facts by those who are eye and ear witnesses of them. The third degree of evidence in the scale of certainty consists of information derived, not immediately from one who has had actual knowledge of the fact by the perception of his senses, but from one who knows it only by its having been asserted by some other person; this is generally hearsay evidence. And, although there is a rule which excludes hearsay evidence, yet there are numerous exceptions to it, which courts are bound to recognize and enforce, and among the exceptions thus recognized is, that when a declaration is in itself a fact, and is part of the *res gesta,* the objection to hearsay evidence ceases.

The distinction between a mere recital, which is not evidence, and a declaration which is to be considered as a fact in the transaction, and therefore evidence, frequently occasions much discussion. The rule is this: if the declaration has a tending to illustrate the question, and any importance can be attached to it as a circumstance, which is part of the transaction itself, and deriving a degree of credit from

its connection with the circumstances, independently of any credit to be attached to the speaker, then it is admissible. The objection of hearsay evidence can never operate to the exclusion of any statement of a fact which the law regards as a proper and safe medium for conveying the truth to a jury ; for, in such case the evidence is admissible, because it is in itself and in connection with the circumstances deserving of credit, and it is no more hearsay evidence than the fact itself. Such evidence does not rest upon the credit due to the person who makes the statement, but it is, in general, good, although the person who made it would not, in ordinary cases, be believed upon oath. It is admitted as a part of the transaction, on the presumption that it is calculated to elucidate the facts with which it is connected, and it is evidence, although the party who made it is himself a competent witness. *Ingram* v. *Plasket*, 3 Blackf. 454. In treating of this subject CLIFFORD, J. (*Insurance Co.* v. *Mosley*, 8 Wal. 412), says : " Undoubtedly whenever evidence of an act done by a party is admissible, the declarations he made at the time the act was done are also admissible, if they were of a character to elucidate and unfold the act, because they derive a degree of credit from the act itself and do not rest entirely upon a statement not made under oath. But such declarations cannot properly be received as evidence, unless the principal act which they accompany and to which they relate is itself material to the issue to be submitted to the jury, nor unless the declarations were made at the time the principal act was done," etc. The record shows that, at the time of the levy of the writ of attachment, these claimants were with the cattle. This is a distinct fact in itself and a fact which was ascertained by Benson by actual perception, a fact which he could and did testify to, so that we find something to which the declarations can attach, and from which they derive a legal support. The latter would be clearly inadmissible were they disconnected from the act of levy. If made at any other time they could not be received, and their admissibility is only secured by

reason of their forming a part of the transaction, of the levy, or what occurred at that time.

In *Nilson* v. *Iverson,* 19 Ala. 95, the declaration of a party, while in the possession of a slave, "that she was his negro and that he intended to keep her," was held admissible as part of the *res gestæ* to prove the character of his possession. And in *Nilson* v. *Iverson,* 17 Ala. 216, the court holds that the declarations of a party in possession are admissible as a part of the *res gestæ* to prove the character of his possession, as that he claims the property as his own, or holds it in subordination to the claims of another. 1 Halstead's Ev. 424, 426.

The material issue to be tried in this case was, the possession and ownership of the property at the date of the levy. The return of the sheriff to the writ shows that the attachment defendants, Oliver S. Glenn and Rufus E. Talpey, were not found in his county at the time the property was attached, and on the trial of the interplea the sheriff testifies that the claimants were with the herd. This certainly was evidence of possession. It might be slight, but still it is entitled to some regard, and especially so when nothing appears to show that the elder Glenn or Talpey had ever been in possession of the cattle. It is true that there were two other parties with the interpleaders at that time, a colored man driving a team, and a man on horseback. And it is claimed that this is evidence of a joint possession. It is sufficient argument on this point to say that these parties nowhere appeared as claimants, nor are they known in any way as interested in this suit, or as parties to this record. Benson says he found the property in the possession of George Glenn and Dr. Talpey. There is an evident confusion of names here, and no effort seems to have been made by the attorneys in the court below to explain this. But it appears from the evidence that, in using these names, the witness intended and designed to designate Lockhart T. Glenn and George O. Talpey, for he says: "these young men, the interpleading claimants, were in possession of the property," etc.

The younger Glenn and Talpey were both present in court, and, from a careful reading of the testimony, there can be no doubt that Benson referred to them when he used the words "George Glenn and Dr. Talpey." Independent of any declarations made by these parties, it would have been error for the court to strike out the evidence of Benson, for the reason that his knowledge of the claimants' possession may have been founded quite as much on the fact that they were with the cattle, and driving them as from their declarations. At least, in establishing the fact of possession, the circumstance that these claimants were with the cattle was proper to be given in evidence, and this circumstance is detailed by Benson.

The next error assigned is the refusal of the court to allow plaintiffs to read in evidence the deposition of James W. Hanna. Several objections were made by the defendants, which we will notice in the following order:

1. The commission is to take the deposition of James H. Hanna, and the deposition taken is that of James W. Hanna.

2. That there is no authentication of the character of the notary public.

3. That the deposition is taken in the original cause, and not in the interpleading suit, and does not permit interrogatories to be propounded in behalf of the claimants.

4. That the parties plaintiffs in this suit were different from those named in the commission.

These objections were all made for the first time on the trial.

There is nothing in the first objection. In legal contemplation, the middle letter constitutes no part of one's name. The law knows but one Christian name, and the omission or incorrect insertion of a middle name or initial is immaterial in pleading; so also in a commission to take depositions. *Franklin* v. *Tallmadge*, 3 Johns. 84 ; *Roosevelt* v. *Gardiner*, 2 Cow. 463 ; *Milk* v. *Christie*, 1 Hill, 102 ; *Ginnis* v. *Martin*, 10 Iowa, 347.

The second objection was not well taken. Generally

speaking, a party cannot be allowed to lull his adversary into security by his silence till the trial commences, and then spring an objection on him which, if sustained, may deprive him of the proof of material facts, which he might have established in a more formal and regular mode, had the objection been made and sustained at an earlier period. 1 Gilm. 425. When formal objections are not made prior to the commencement of the trial, they cannot be heard afterward. The party seeking to use the deposition would be justified in believing that these objections had been waived. To hold any other doctrine on this subject would work most serious mischief. In many instances it would operate to prevent a party from availing himself of the attendance of witnesses, by whom the same matters contained in deposition might be proved.

The third objection is of a more serious and substantial character. The notice was served on the defendants in the attachment suit as well as on the claimants, and contained the statement that the deposition was to be used in evidence on the trial of the above entitled cause, now pending, etc., and that they were at liberty to file cross-interrogatories and join in the commission.

Without deciding whether the notice was sufficient to bind the claimants, we find, from an examination of the notary's certificate to the deposition, that Hanna was sworn as a witness in the case of *Doane et al.* v. *Oliver S. Glenn and Rufus E. Talpey.* It does not appear that he was sworn as a witness in the cause of *Glenn and Talpey, interpleaders,* v. *Doane et al.* To have made this deposition available on the trial of the interplea the witness should have been sworn in that suit. The parties were different, and to have admitted the deposition under these circumstances would have been to give the plaintiffs in error the benefit of his testimony, without the sanctity of an oath. We are of the opinion that the court committed no error in excluding the deposition.

The court gave to the jury the following instruction, which is assigned for error :

"The burden of showing that they are the owners of the property in question, and were such owners at the time of the levy of the attachment is upon the interpleading claimants. But, if, at the time of the levy of the writ of attachment in this case, the property was found in the possession of the interpleading claimants, then, from such possession, the law raises a presumption that the interpleading claimants were then the owners of such property, and unless it has been shown to the satisfaction of the jury that such possession of the interpleading claimants (if they were so in possession) was colorable or fraudulent, and a possession for the use of the defendants in this suit, the interpleading claimants may recover."

The plaintiffs in error claim that the law raises no presumption of ownership from the possession of personal property. Matthews, in his work on Presumptive Evidence, page 30, says: "As to personal property of a movable nature, the general rule is, that possession constitutes the criterion of title, and for this reason, that no other means exist by which a knowledge of the fact to whom it belongs can be attained. Hence, a vendor of personal chattels is never expected to show the origin of his right."

Presumptions, or, as they are sometimes called, "intendments of the law," are inferences or positions established for the most part by the common and occasionally by the statute law, and are obligatory alike on judges and juries. They differ from presumptions of fact, or mixed presumptions, in two important respects. In the latter a discretion more or less extensive, as to drawing the inference, is vested in the tribunal, while in the former the law peremptorily requires a certain inference to be made whenever the facts appear, which it assumes as the basis of that inference. In the second place presumptions of law are, in reality, rules of law, and a part of the law itself, and the court may draw the inference whenever the requisite facts are developed in the pleading, while all other presumptions, however obvious, being only inferences of fact, cannot be made without the intervention of the jury. There is a class of presump-

tions which the law, out of regard for public policy, recognizes and enforces. In such cases it gives an artificial effect to the facts which give rise to the presumption, beyond their natural tendency to produce belief. For instance, when one sets fire to a house the presumption is that he intended injury to its owner. If, then, a legal presumption is one that the law peremptorily requires to be drawn from certain ascertained facts, and which is incumbent alike on courts and juries to make, then clearly the possession of personal property does not create such a presumption. It is purely an inference of fact to be dealt with by the jury, and not one of law to be applied by the court, and falls strictly within Mr. Starkie's definition of natural presumptions, or presumptions of mere fact. It depends wholly upon its own natural force and efficacy in generating conviction in the mind, as derived from those connections which are pointed out by experience, and is altogether independent of all artificial legal relations. It is a fact to be weighed by the jury, when they have found it, as a circumstance, tending to establish in their minds the main fact in issue, to wit: whether the possessor is the real owner.

The inaccuracy of calling it a legal presumption finds sanction in the language of many courts and writers upon the subject of evidence. 12 Wis. 594.

It is said that presumptions of this kind may be properly termed legal presumptions, because they have been so frequently drawn under the sanction of legal tribunals that they are to be viewed as presumptions authorized by law. We cannot, therefore, say that in this cause the naming it a legal presumption in the instruction to the jury was error. The jury were told that the burden of proving ownership was upon the claimants, and they were further told, that while the law did raise a presumption of ownership from possession, yet if that possession was colorable, or for the use of the attachment defendants, then they could not recover. Even if the instructions were erroneous we would not feel at liberty to reverse the case on that ground. The plaintiffs in error had every opportunity to make good their

claim, if they had any. Their examination of witnesses was long and ingenious, and yet they failed to bring before the jury any evidence calculated to satisfy them that the elder Glenn and Talpey were the owners of the property. There are many suspicious circumstances connected with the purchase of the cattle and the conduct of the parties, and these were all brought to the attention of the jury, and after weighing them they returned their verdict for the claimants.

Whatever may be our opinion of the merits of the controversy, we cannot usurp the function of the jury and disregard a verdict that has evidence to support it. The issue below was a clear and distinct one. Was the property levied upon the property of the interpleaders? That issue was fully tried and the court left the jury free to pass upon it, and they resolved it against the plaintiffs in error. The court, in the second instruction given to the jury, told them that if the interpleading claimants purchased the stock in controversy with the funds of the defendants, or held the same for the use of the defendants, then such purchase and holding was a fraud upon the creditors of the defendants, and that the property in question was subject to the levy of the plaintiffs' writ of attachment. Under this instruction, the jury had the right, and doubtless did consider fully, not only the evidence of Blackington, but all the circumstances which were brought out on the trial, and which indicated the character of the transactions had by the younger and elder Glenn and Talpey in reference to the cattle.

Objection is also made to the form of the judgment rendered in this cause. We are of the opinion that the judgment in the present form is irregular. It would be better, in entering judgment in cases of this kind, to have it show that the property described in the plea is the property adjudged to be restored, instead of the property levied upon by the writ of attachment. We do not, however, conceive that an irregularity of this kind is in any way prejudicial to the plaintiffs in error.

There is one other point made by the plaintiffs in error which we think it proper to allude to. It is claimed that

the return, made by the officer on the writ of attachment, was *prima facie* evidence that this property belonged to Oliver S. Glenn and Rufus E. Talpey, as against the interpleading claimants, and would have been sufficient to support the issue on behalf of the plaintiffs, without any further evidence, until rebutted. It is quite true that such returns are commonly evidence of more or less force, according to circumstances, and, particularly, with respect to parties against or for whom they are sought to be used. A familiar illustration is, when a person other than the defendant in execution sues or is sued for property levied on under it, in which case the return usually states the property to belong to the judgment debtor, but the real owner is always permitted to contradict such statement. 2 Philips' Ev. 368, 369 (margin).

The sheriff, in making his return, does not state to whom this property belongs, nor in whose possession it was found. It further appears that, at the time of the levy of the writ, Oliver S. Glenn and Rufus E. Talpey were not found in Weld county. It seems to me that it would be doing violence to every principle of law, to hold that such a return furnishes *prima facie* evidence of ownership in the elder Glenn and Talpey against the interpleaders.

In accordance with the view we have taken of this case, the judgment of the court below must be affirmed.

*Affirmed.*