. HOAGLAND, APPELLANT, v. COLE, APPELLEE.

1. OMISSION OF EVIDENCE.

A cause will not be reviewed upon the evidence, where it clearly appears that material evidence, given at the trial, is not brought to the appellate court; in such case the presumption arises that the verdict of the jury or finding of the trial court was fully warranted.

2. HARMLESS ERROR.

Erroneous instructions are not sufficient to warrant the reversal of a cause where the evidence is so clear and so strong that the jury would not have been justified in arriving at any other verdict than the one actually rendered; and this rule applies to a case where the appealing party fails to bring before the appellate court material evidence given at the trial.

*Appeal from the District Court of Arapahoe County.*

ACTION to recover damages for the conversion of personal property. Verdict and judgment for plaintiff. Defendant appeals.

When the cause of action herein arose, and long prior thereto, the plaintiff Cole was the owner of a large ranch, containing about 900 acres, situate in Jefferson county, Colorado. In the fall of 1887, Cole leased the ranch to one Banning for a term of three years from November 1, 1887, to November 1, 1890. Among other things, it was stipulated that Banning should go upon the premises, take, use, and care for the personal property mentioned in the lease, and farm and work said ranch in a good, workmanlike manner; that he should properly care for and irrigate the alfalfa and other crops upon said ranch; that he should put in the necessary crops, cut, care for, and cure the same; and that he should in all things be diligent and faithful in the management and operation of said ranch.

For the use of the ranch and of the personal property, it was agreed that Banning should pay and turn over to plaintiff one half of all that was raised upon the ranch; that such grasses, hay or alfalfa as might be necessary to feed the cat-

tle upon the ranch should be fed before the division; and that after such feeding the hay should be cut and stacked upon the ranch in a good, workmanlike manner, and should be equally divided between the parties to the lease in such a way and manner as they should agree at the time of the division.

The lease contained further stipulations in reference to the baling and disposal of the hay, the increase of the cattle, the furnishing of the seed for sowing, the sale of eggs, milk, butter, and other farm products, and the division of the same or the proceeds thereof.

By the terms of the lease plaintiff was to receive as rent a certain share of the products of the ranch *in kind; but nothing in money.* It was further stipulated in the lease that Banning should not underlet the premises, nor any part thereof, nor assign the lease, without the written consent of plaintiff. Plaintiff reserved the use of a sleeping room over the granary, and also the right for himself and friends at all times to enter upon said premises and to go upon the lake and catch fish. It was further stipulated that plaintiff might forfeit the lease and re-enter the premises without legal process, in case Banning should neglect to keep and perform his covenants.

Messrs. ROGERS, CUTHBERT & ELLIS, for appellant.

Messrs. BENEDICT & PHELPS, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

This was an action in the nature of *trespass, de bonis asportatis,* at common law. In November, 1888, the defendant Hoagland, as sheriff of Jefferson county, by virtue of a certain writ of attachment against plaintiff's lessee, Banning, seized and took into his possession certain hay raised and stacked upon the ranch by Banning during his occupancy. The hay was attached as the property of Banning.

Plaintiff, claiming the hay as his own, brought this action against Hoagland to recover the value thereof. Hoagland justified the seizure under the writ of attachment, claiming that the hay was the property of Banning.

Plaintiff's claim to recover is based upon two grounds:

*First*, plaintiff claims that the so-called lease of the ranch by himself to Banning was, according to the proper construction of its terms and conditions, nothing more than a cropping contract; that plaintiff was at all times a tenant in common with. Banning of the crops raised upon the ranch until the division thereof, and that plaintiff's moiety in the hay was not subject to attachment for Banning's debts in any event.

*Second*, it is claimed by plaintiff that some time before the levy by the sheriff, Banning had actually sold and delivered possession of the hay to plaintiff, and that plaintiff had been in the actual and continued possession thereof from the time of such sale up to and including the time of the levy.

The first ground claimed by plaintiff, as above stated, involves questions of law of great practical importance to owners, as well as occupiers and tillers, of the soil; it involves questions upon which different courts have expressed different opinions under similar as well as varying circumstances. The questions thus presented have been ably discussed in the briefs of counsel and upon oral argument; but the verdict of the jury renders their consideration and determination unnecessary. From the amount of the verdict it is evident that the jury found in favor of the plaintiff upon the second ground claimed by him, as above stated, and not upon the first ground.

On the trial the evidence tended to show that during the first year of Banning's occupancy of the ranch under the lease, he had become much indebted to plaintiff; and that before the seizure of the hay by the sheriff, Banning had surrendered possession of the premises to plaintiff, except that he still continued to live in the house, kept some live stock upon the premises, and milked the cows for plaintiff.

The evidence further tended to show that before the levy
an agreement was entered into between plaintiff and Banning
to the effect that plaintiff should buy Banning's interest in
the hay raised and stacked upon the ranch; that before the
levy plaintiff did buy and take exclusive possession of such
hay, including the hay levied on, and continued in such pos-
session up to and including the time of the levy; and that
plaintiff was in the actual possession of the hay when the sher-
iff seized and levied upon the same.

It is true, there was some evidence of a contrary tendency.
But where a cause is tried upon the testimony of witnesses
given orally before the court, as in this case except as to one
witness, it is not the province of an appellate court to pass
upon mere questions of conflicting evidence. *Jackson et ux.
v. Allen,* 4 Colo. 268.

Furthermore, by a well settled rule, we are precluded from
disturbing the verdict or judgment in this case upon the evi-
dence. It clearly appears that all the evidence given at the
trial has not been brought to this court. This fact was no-
ticed in the printed brief originally filed by appellee, as well
as by the oral argument of counsel. The bill of exceptions
shows that there was read at the trial in behalf of plaintiff
the deposition of one A. B. Cole, and that there was an ob-
jection by defendant to a single interrogatory and answer
contained in such deposition. But neither the deposition
itself, nor any part thereof, nor the tendency of the evidence
therein contained, has in any manner been brought here for
review; not even the interrogatory and answer objected to
have been brought here. In this state of the record, we can-
not pass upon the objection to the interrogatory and answer,
nor can we review the cause upon the evidence. By other
evidence it appears that A. B. Cole was plaintiff's son; it
was through A. B. Cole *as agent* that plaintiff claimed to have
taken possession of the ranch upon the surrender thereof by
Banning; it was also through such agent that plaintiff claimed
to have taken possession of the hay in controversy. It must
be presumed, therefore, that A. B. Cole was an important wit-

ness for plaintiff, and that his evidence was material upon the merits of the controversy. Under the circumstances of this case, it must be further presumed that the deposition of A. B. Cole in connection with the other evidence was sufficient to warrant the jury in sustaining plaintiff's claim in every particular, including the alleged possession of the whole of the hay in controversy as well as the amount and value thereof.

In *Watson v. Hahn*, 1 Colo. 495, Chief Justice Hallet said : " It does not appear that the bill of exceptions contains all of the evidence given on the trial in the court below, and we will presume that the finding of the court is correct."

In *Martin v. Force*, 3 Colo. 200, where the bill of exceptions did not show that all the evidence was brought before this court, Chief Justice Thatcher said : " The bill of exceptions under our practice act, which is similar to that of Illinois, is to be regarded as a pleading of the party aggrieved, and if it be in any way ambiguous, uncertain or omissive, it must be construed like any other pleading, most strongly against the party who prepared it."

In *Ward v. Wilms*, 16 Colo. 89, it was said : " The bill of exceptions does not purport to contain all the evidence. Hence we must presume that plaintiff's title to and possession of the property in controversy were abundantly sustained by the evidence."

A cause will not be reviewed upon the evidence unless the whole evidence is properly certified to the appellate court. These views are supported by numerous decisions. *Cook v. Hughes*, 1 Colo. 51 ; *Law v. Brinker*, 6 Colo. 555 ; *Schwed v. Robson*, 12 Colo. 400 ; *Johnson v. Wiley*, 74 Ind. 233 ; *Thames Loan & Trust Co. v. Beville*, 100 Ind. 312.

The verdict of the jury having been given upon the theory that plaintiff was the owner of all the hay by actual purchase and delivery of possession before the levy, we need not review those instructions which relate to plaintiff's claim of a moiety of the hay on the theory that the lease was a mere cropping contract, and that plaintiff was a tenant in common

with Banning as to the products of the ranch before the division.

The charge of the court upon the theory of plaintiff's alleged ownership and possession of all the hay levied upon stated the law in clear and comprehensive language, and with fairness and impartiality. It is true, some proper requests to charge were not given; but as was said in *Gaynor v. Clements*, 16 Colo. 211, "The instructions as given state the law applicable to the controversy impartially and with substantial accuracy. The instructions refused were either incorrect or unnecessary. It is not error to refuse a correct instruction, if the substance thereof is otherwise fairly incorporated in the charge as given."

The law relating to the sale of goods and chattels in actions of this kind has long been a fruitful source of controversy, and as the charge of the trial court, in all matters of substance, appears to be in harmony with numerous decisions of this court, a discussion in detail of the objections thereto is unnecessary. But even if such objections were well founded as a matter of technical abstract law, they could not properly be made the ground of reversing the judgment as the records now stand. It is well settled that erroneous instructions are not sufficient to warrant the reversal of a cause where the evidence is so clear and so strong that the jury would not have been justified in arriving at any other verdict than the one actually rendered. This rule should, also, be held to apply to a case where the appealing party fails to bring before the appellate court material evidence given at the trial. For, as we have seen, under such circumstances the presumption arises that the verdict was fully warranted. Upon this subject an eminent author says:

"Courts of error do not sit to decide moot questions, but to redress real grievances. It is, therefore, a rule of nearly all the courts, that no judgment will be reversed on account of the giving of erroneous instructions, unless it appear probable that the jury were misled by them. Expressions of this rule could be multiplied almost without limit. Thus, it is

said that instructions faulty, or technically erroneous, will not work a reversal of the judgment, if the jury were not misled, or if, as a whole, the case was fairly presented to them, and especially if their verdict is obviously correct. So, although an instruction given to the jury contained matter technically erroneous, yet, if the objectionable part was merely superfluous, and not calculated to mislead, the judgment will not be reversed because of the giving of it." 2 Thompson on Trials, § 2401 *et seq.*

These views are in harmony with the legislation of this state in *civil* cases. Section 78 of the Code of Civil Procedure provides : " The court shall in every stage of an action disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect."

The judgment of the district court must be affirmed.

*Affirmed.*

## ON PETITION FOR REHEARING.

PER CURIAM. A rehearing is asked upon the ground that this court was not justified in concluding that the jury gave their verdict for the whole, and not for a moiety, of the hay seized by the sheriff.

The verdict was for $735. The complaint was for 160 tons of hay of the value of $1,200. Plaintiff was present when the hay was seized; he testified that he and the deputy sheriff making the levy " concluded that there was something in the neighborhood of 130 tons," and such was the quantity stated in that officer's certificate of levy. The length, breadth, and height of the several ricks of hay as described in the certificate indicate the same quantity. Plaintiff further testified that the hay was worth from $7 to $8 per ton. Other witnesses, particularly defendant's witnesses, testified that the quantity of hay and the value per ton were considerable less than the amount and value thus testified to by plaintiff. No

witness making any definite statement as to quantity or value, placed the same above the figures claimed by plaintiff.

At the trial, counsel, on introducing evidence for defendant, stated that plaintiff's witnesses had sworn to 130 tons as the amount of hay taken. In the motion for a new trial below, as well as in the assignments of error in this court, it is claimed that the verdict of the jury is excessive,—a position quite inconsistent with that assumed upon this petition for rehearing.

If the jury had found for the largest amount of hay taken as shown by any fair consideration of the evidence, 130 tons, and at the highest value shown by the evidence, $8 per ton, their verdict, if for the whole, could only have been $1,040, and if for a moiety, only $520. It is clear, therefore, that the verdict in favor of plaintiff for $735 was not based upon his being entitled to recover for a moiety only. A verdict for that sum based upon one half of the hay taken would be contrary to any reasonable view of the evidence. A fair consideration of the evidence, however, would warrant the verdict for $735, upon the basis that the whole amount of hay taken was 105 tons of the value of $7 per ton.

The petition for a rehearing must be denied.

*Rehearing denied.*