THE ASPEN WATER AND LIGHT CO. v. CITY OF ASPEN.

1. CORPORATIONS—STOCKHOLDERS.

A corporation cannot exist without stockholders or members.

2. SAME—GRANTS.

A grant to a body organized as a corporation, by the execution of a statutory certificate, but which, at the time of the supposed grant was and continued to be without other organization, officers, stockholders or members, is inoperative.

3. SAME—OFFICERS—POWERS.

The statute which provides that the corporate powers shall be exercised by a board of directors or trustees, who must be stockholders of the company, from which body a president shall be elected, constitutes a limitation upon the corporate power.

4. SAME.

In this case no stock was ever subscribed for or issued and no agreement by the promoters of the company in relation to its stock was shown to exist: *held*, there never was a board of directors competent to make a contract, nor any person who could execute an agreement for the company.

5. PERFORMANCE—DAMAGES.

It is necessary in an action against a city for damages for breach of

contract, for the plaintiff to show performance or its legal equivalent.

6. APPELLATE PRACTICE—IMMATERIAL ERROR.

Where a party could not have sustained a judgment in his favor upon the proofs he produced, error in instructing the jury will not warrant a reversal.

*Appeal from the District Court of Pitkin County.*

Mr. JAMES M. DOWNING, Mr. PORTER PLUMB, and Mr. JOSEPH W. TAYLOR, for appellant.

Mr. WILLIAM O'BRIEN and Mr. R. G. WITHERS, for appellee.

BISSELL, P. J., delivered the opinion of the court.

The industry of counsel has not unearthed a precedent for an action resembling this in some of its phases. The city council of Aspen passed an ordinance purporting to grant to The Aspen Water and Light Company the exclusive right to furnish water and light to the city, and then attempted, according to the plaintiff's contention, to modify and repeal the franchise. The suit is for the damages resulting from this alleged legislative action. Numerous questions are raised and discussed, but as the claims of the appellants must be adversely adjudged on two grounds, no other proposition will be determined, and only incidental reference if any will be made to the other contentions.

During the winter of 1884–5, a half dozen gentlemen, who may be left unnamed, devised a plan to furnish the city of Aspen with water and electric lights. In furtherance of the scheme on the 27th of February, 1885, they prepared articles of incorporation designed to incorporate The Aspen Water and Light Company. It will be assumed that the parties complied with the statute in the execution and record of the certificate, for there is nothing in the proof tending to show otherwise. Concurrently an ordinance was introduced in the common council of the city, which granted to this

company the right to maintain and operate the works neces-
sary to distribute water and lights to the citizens.    The grant
was for a term of twenty years, and the ordinance contained
all of the usual provisions supposed to be necessary safe-
guards to protect the municipality, and to limit and define
the rights of the corporation.   Nothing further need be stated
concerning it.   It was alleged and proven that this ordinance
was passed with due observance of the conditions and limi-
tations prescribed by the general statutes, and by the vote
of a majority of all the persons elected to the council.   It
will be assumed for the purposes of this decision that the
ordinance was valid and became a law.   It provided that
within ten days from the time it was ratified by a vote of the
people, the company should commence active operations for
the construction of the works according to the specified plan,
and file a bond to protect the city against any breach of the
agreement or disregard of the limitations of the act.   The
vote was an affirmative one, and the promoters at once com-
menced what, in their proofs and arguments, are called oper-
ations.   The contracts were limited, and the amount of work
done was exceedingly small.   The reason of this is very plain.
Early in April, a controversy sprung up which extended to
the citizens, the members of the council, and the applicants
for the right to furnish water and light.   What the council
did is left in a little obscurity.   On April 13th, a resolution
was offered to forfeit the franchise.   It was ineffectual for
legal purposes, for it was not adopted by a majority of all the
members elected.   Its further consideration may therefore
be dismissed.   On the 15th of April, a motion was made in
the council to adopt another ordinance authorizing a contract
with the water and light company.   This evidently omitted
a part of the provisions of the original act.   Just what this
latter ordinance was, the scope of the amendment, or how it
varied from the original is not apparent from the proof, nor
is the claim of counsel concerning it made evident by their
arguments.   The complaint undoubtedly charges that the
city refused to permit the company to construct its works,

avers that it notified them it would not carry out its agree-
ment, attempted to repeal the ordinance, and to contract
with another corporation.   There was no evidence, however,
offered to show any rescission by the city, other than the
motion of April 15th, which has been stated.   Evidence
was introduced which tended to prove that after the passage
of the resolution in April, one of the principal promoters
returned to the city, and started with a force of men to dig
on the street.   This was stopped by the mayor, but for
reasons which are not disclosed.   Work was never after-
wards resumed.   In April, 1890, the company brought this
action to recover damages.   These facts were elicited to
support the contention that the plaintiff had acquired certain
rights by virtue of the ordinance, which had been infringed
by the subsequent proceedings of the council.   It was claimed
the city authorities repealed the ordinance and rescinded a
contract of date March 21st, between the city and the com-
pany, to supply water and lights at an agreed price.   To
further sustain a recovery, and evidently as an essential part
of it, a large amount of evidence was offered to the point
that all the promoters of the enterprise were men of abun-
dant capital and had ample means to perform the contract.
The proof, however, was limited to the financial ability of
the promoters, and in no manner tended to show that the
company itself was possessed of any means, or had in its
treasury any funds which could be used for these purposes.
It was shown that the treasury was empty, and that no stock
had ever been subscribed for or been issued.   Judgment
went for the defendants.   The record has been thus fully
stated that the force and effect of the situation of this com-
pany, and the position which the court takes concerning it,
may be thoroughly appreciated.

In an action between individuals where the gravamen of
the suit is a breach of a contract, to support the recovery of
substantial damages, the agreement must appear either pre-
sumptively or by proof to have been entered into between
persons competent to contract, and performance or its legal

equivalent must be established. There was manifest failure in this case. as to the first element of this proposition. A corporation in Colorado is undoubtedly a creature of the statute. To create it, the statutory requirements must be followed, and all the prescribed formalities which relate to the essentials of corporate existence must unquestionably be observed. Thus far, it may be conceded, the plaintiff has gone with its proof. The certificate of incorporation was offered in evidence and received without objection, and if the execution of that paper *ex vigore* gave breath and life to the corporate entity, it might be conceded that The Aspen Water and Light Company was competent to contract, and possessed of power to sue and be sued. It is quite possible, that if the corporate character had not been otherwise attacked than by the general denial contained in the answer, the legal presumptions flowing from the production of the certificate would have sufficed to enable it to maintain the suit. It is likewise possible, where a city contracts with a corporation, it may be estopped in a suit upon that contract to deny the corporate character. The application of this principle, however, can only concern the written agreement between the city and the company, by which the city agreed to take a certain number of lights and a certain amount of water, and pay a specified price for the service. It is not plain and may well be doubted whether this latter principle can be invoked in a suit brought by a corporation against a city to recover damages sustained, if at all, by the repeal of an ordinance granting certain rights and privileges to the complaining party. Ever since the principle was first enunciated by the supreme court of the United States, that when a legislative body has granted a charter which confers certain rights and privileges upon a corporation and contains elements of a contract, the sovereignty may not repeal it, and thereby violate the contract which it contains, there has been a reluctance on the part of the courts to extend the principle to cases not strictly within the terms and limits of that adjudication. Some courts have decided that where a corporation is in

existence prior to the time of the grant of the privilege, and
the right conferred simply relates to the use of the streets of
a city, or the construction of bridges, or the establishment of
ferries, such grants if not indefinite in their character will be
taken to be licenses which are the subjects of rescission, and
not to fall within the principle of the *Dartmouth College
Case.*  In one sense, of course, ordinances of this description
contain certain contractual elements which the courts recog-
nize and enforce; but where the breach alleged is charged to
come from the repeal of the act by the legislative body, the
doctrine of estoppel cannot be invoked to prevent the city
from contesting the corporate existence of the company bring-
ing the suit.  Whatever may be the general rule of law,
which determines the extent of the issue made by the allega-
tion of corporate character and a general denial of the aver-
ment, the plaintiff in the present suit settled the matter by
its own proof.  Recognizing the necessity to show a readiness
and ability to perform, much evidence was put in to show
the financial status of the promoters.  While giving evidence·
on this subject, one of them testified that all the promoters
were possessed of ample means; but there was no money in the
treasury of the company, and the corporation had issued no
stock at the time of the passage of the alleged ordinance, the
taking of the vote of the people, nor up to the time of the
trial on the 12th of May, 1892, more than seven years after
the doing of the things stated.

. Another witness testified that they had never issued a par-
ticle of stock and never intended to.  There was no proof |
made of any stock subscription, or of the existence of any
agreement to take certain stock, or any specified interests in
the enterprise; nor evidence given of any contract between
the parties which would make them joint holders of the stock
of the company when issued.  Under these circumstances,
the importance of the suggestion that both parties to an agree-
ment must be competent to contract, becomes apparent.  In
this state, as in most others, corporations are organized under
a general statute.  We are not concerned with all the limita-

tions and conditions annexed to the right whether for the benefit of the body or the protection of the public. The first important step to be taken is the preparation and record of the prescribed certificate. It would be unhesitatingly conceded that such a certificate, containing whatever was directed by the act, must be executed by the persons interested and filed in the offices named. When this certificate is executed and filed, it may be true that for some purposes the corporation has an existence. The extent of the corporate authority, under these circumstances, need not be inquired about, for the case does not disclose the performance of other essential corporate acts. According to the present record, all the promoters ever did was to execute the certificate. It only remains to determine the legal consequences which flow from the failure to complete the organization by the preparation, issue and sale of stock. In some states the general incorporation act provides that, upon the filing of the certificate, the persons who sign it and their successors shall become a body corporate and be invested with certain powers. But even in a case like that, the authorities hold that it only thereby becomes a *quasi* corporation, invested possibly with certain powers for certain limited purposes. In reality it becomes a corporation only in name. It is universally agreed that a corporation cannot exist without stockholders or members. As said by the learned Commissioner Pattison, in *A. R. L., T. & C. Co. v. F. L. & T. Co.*, 13 Colo. 587 : " Without organization and members, without officers and stockholders, a corporation is but a naked body." Morawetz on Corporations, vol. 1, sec. 33.

We are thus confronted with this situation : Conceding *ex gratia* that The Aspen Water and Light Company had an existence on the 27th of February, 1885, and was possessed of sufficient corporate capacity to render the grant contained in the ordinance operative to vest in that company the rights expressed when the organization should be complete, it remains true that at the time of the alleged breach and the bringing of the suit, the grant had not become operative.

Since the grant ran to an entity not then *in esse*, it may be doubted whether it could be rendered effective by subsequent birth. This difficult question need not be adjudged. The entity never was born, and hence the grant never took effect. The agreement of March 21st is subject to the same difficulties. It purports to have been executed by the town of Aspen, through Hooper, its mayor, and by The Aspen Water and Light Company by Wilson, its president, attested by Cleary, its secretary. The company never had any legal president, and never had any legal secretary, and, consequently, the so-called contract was never executed. The statute provides (Gen. Stats. of 1883, secs. 242-4) that the corporate powers shall be exercised by a board of directors or trustees, who must be stockholders of the company, and from which body a president may be elected. This is a statutory limitation upon the corporate power, and the governing body must, according to that statute, be composed of shareholders, and the president can only be rendered competent by possessing the same statutory qualification. Since it is true that no stock was ever subscribed for or issued by this company, and no agreement was established which obligated the promoters for the stock of the company so that they might be taken to be joint owners of all of it, it follows that there never was any board of directors competent to make a contract, nor any persons who could execute an agreement for the company. Under these circumstances, one of the first essentials of a valid contract is absolutely wanting. There was not at the date of the alleged breach, and there is not at the present time, any such corporation as The Aspen Water and Light Company. What the rights of the promoters may be, if any, is not before us for consideration. The suit was not brought by them nor in their behalf; but in the name and on behalf of a corporation without a legal existence. Having established this fact by their own proof, its legal results may be invoked by the appellee to maintain the judgment entered in its own favor.

An equally insuperable difficulty springs from the second

consideration suggested, to wit: the necessity of proof of performance or its legal equivalent. It would be folly and a waste of time to attempt to state what, under all circumstances, would amount to performance, or what, under others, would be held to be its legal equivalent, where one of the parties showed a willingness and readiness to perform and there was a refusal by the other. The proof in this case demonstrates that The Aspen Water and Light Company, as such, never either performed or tendered performance, or was ever able to discharge any part or portion of its side of the contract. The record is barren of evidence showing any act by The Aspen Water and Light Company other than what possibly may be called its act in the filing of the certificate of incorporation. Beyond that it did nothing. It never laid pipes, strung wires, dug ditches, brought water, built an electric plant or took any substantial steps in any of these directions. Its work ceased with the filing of the paper. The record contains much testimony which tended to show that after the passage of the ordinance and the execution of the alleged agreement of the 21st of March, the promoters of the enterprise made some contract looking to the purchase of an electrical plant, some provision with reference to the supply of water, and did a very considerable amount of work with reference to the initiation and protection of water rights essential to the complete performance of the contemplated scheme. One of the principal promoters attempted to do a little work on the streets, and continued it until interrupted by the mayor. The importance and significance of this proof is not apprehended. What would have been the rights of The Aspen Water and Light Company had they completed their corporate organization, built the plant and tendered performance, need not be considered, for, as a corporation, it did nothing. What the rights and remedies of the promoters might have been, if the suit had been brought on their behalf, to recover the damages which they sustained by reason of their contracts and expenditures, may likewise be left undetermined. The suit was not brought

on their behalf, and the proof with respect to these matters which they offered, and which the court received, was totally inadmissible to support a recovery by The Aspen Water and Light Company. This demonstrates that there was neither performance, tender of performance, nor ability to perform on the part of The Aspen Water and Light Company. If all the proof offered and found in the record had been admissible in the present suit, and was to be considered in the determination of the issues, it would remain true that The Aspen Water and Light Company proved no cause of action accruing to it because of the breach of any contract, or the passage of any ordinance by the city of Aspen.

Many errors are assigned on the instructions which the court gave. Since the plaintiff could not sustain a judgment on the proof which it produced, such errors will not warrant a reversal. *Hoagland v. Cole*, 18 Colo. 426. The judgment is right. The company was not entitled to recover, and the judgment will be affirmed.

*Affirmed.*

THOMSON, J., did not sit in this case.